**Daniel GAMERY, Plaintiff,**

v.

**GREIF BOARD CORPORATION, et al., Defendants.**

**No. 5:94 CV 1781.**

United States District Court, N.D. Ohio, Eastern Division.

Oct. 7, 1996.

Roy M. Kaufman, Cleveland, OH, for Plaintiff.

Pericles G. Stergios, Stergios & Kurtzman, Massillon, OH, Allan Hull, Hull & Hull, Mayfield Village, OH, for Defendants.

### MEMORANDUM OF OPINION AND ORDER

NUGENT, District Judge.

This case is before the Court upon the Motion of Defendant, Greif Board Corpora-

**524**

tion, for Summary Judgment. (Doc. # 37). Plaintiff has filed his Reply to Defendant's Motion for Summary Judgment (Doc. # 47) and Defendant has filed its Reply Memorandum. (Doc. # 48). The Court has read the briefs and arguments set forth by counsel. For the following reasons the Motion for Summary Judgment (Doc. # 37) is GRANTED in favor of Defendant, Greif Board Corporation.

The present case was filed on August 30, 1994, before Judge David D. Dowd. On July 7, 1995, pursuant to the protocol for the creation of a docket for Judge Donald C. Nugent, the case was transferred to the docket of this Court. In his Complaint, Plaintiff alleges that the Defendant terminated his employment in breach of the collective bargaining agreement between Defendant and the Plaintiff's union, the United Steelworkers of America, in violation of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.[1] Specifically, Plaintiff claims that Defendant dismissed him without cause and that the union inadequately processed his grievance when it failed to properly file a request for arbitration within the time limits mandated by the collective bargaining agreement. Plaintiff seeks reinstatement, back pay and benefits in addition to compensatory and punitive damages. Defendant has moved this Court for summary judgment arguing that there are no genuine issues of material fact that exist in regard to the discharge of Plaintiff.

Plaintiff, Daniel Gamery, was hired by Defendant at its manufacturing facility in Massillon, Ohio in February of 1987. Plaintiff was a member in good standing of the United Steelworkers of America, Local 8155. His employment was governed by the collective bargaining agreement between the Defendant and the union. The collective bargaining agreement provided for a five step grievance procedure to resolve disputes between

Defendant and its employees. The final step in that grievance procedure was a binding arbitration provision.

On September 29, 1993, an employee of Defendant discovered marijuana in Plaintiff's work equipment. Plaintiff acknowledged that he knew about the marijuana but denied that it was his marijuana. As a result of the discovery, Defendant requested that Plaintiff take a urine test at a local hospital. The initial urine test was faulty and the next day Plaintiff took a second urine test. The second urine test came out positive for use of marijuana. Upon receipt of the urine test results on October 5, 1993, Plaintiff was terminated from his employment with Defendant. The stated cause for Plaintiff's termination was his possession of illegal drugs on company property in violation of company rules and regulations pertaining to safety in the work place.

The union immediately filed a grievance on Plaintiff's behalf stating that he was fired without just cause. Thereafter, the five step grievance procedure commenced. The grievance procedure continued on schedule until the fifth step. After the culmination of the fourth step of the grievance process, the union did not advise the company of its intention to submit the grievance to final binding arbitration within the five day period as required by the collective bargaining agreement. Rather, the union waited forty days to submit the grievance to arbitration.

On April 6, 1994, the matter was heard by the arbitrator, Thomas R. Skulina. The arbitrator found that the forty day delay in the grievance process caused the matter to be untimely and not arbitrable. Based upon this finding, the arbitrator dismissed the arbitration stating that he had no jurisdiction to hear the case on its merits. Thereafter, the present case was filed.

Summary judgment is appropriate where the court is satisfied "that there is no genu-

1. Of important note is the nature of Plaintiff's complaint. This action was originally brought as a "hybrid" breach of duty/fair representation claim under § 301. Initially, the Plaintiff also included the union for its alleged breach of its duty of fair representation. However, while this matter was still pending before Judge David D. Dowd, the Plaintiff motioned the Court to dismiss the union *with prejudice*, clearly stating that "Plaintiff will proceed with defendant Greif Board Corporation as the only defendant in this case." (Doc. # 27). In a Memorandum Opinion and Order dated January 27, 1995, Judge Dowd granted Plaintiff's Motion to Dismiss the union with prejudice. (Doc. # 30).

ine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)). The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d .176 (1962), *see also U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citation omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149 (6th Cir.1995). The text of FED.R.CIV.P. 56(e) states:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of summary judgment, where otherwise appropriate.

The district judge, in considering this type of motion, is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The court will not consider non-material facts, nor. will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. at 2510–11. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails:

"... the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

The present case requires an interpretation of the terms of the collective bargaining agreement entered into between the parties. Through the use of a collective bargaining agreement parties are able to delineate the terms, manner, scope and other conditions of the employment contract between the labor organization and the employer. The Labor Management Relations Act manifests the strong federal policy favoring judicial enforcement of collective bargaining contracts or agreements. § 301 of the Act provides as follows:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined. in this chapter, or between any such labor organizations, may be brought in any district court in the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Of utmost importance to this policy is the "full play" given by the courts to the means selected by the parties for settlement of their differences under a collective bargaining agreement. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343, 1345–46, 4 L.Ed.2d 1403 (1960); 29 U.S.C. § 173(d). In the present case, the collective bargaining agreement between the parties contained specific processes and limitations that controlled the parties grievance procedures. Plaintiff's Complaint states two causes of action; 1) that his discharge was not proper under the terms of the collective bargaining agreement; and, 2) that the union failed its duty of fair representation by submitting the matter to arbitration in an untimely matter. As previously stated, Plaintiff dismissed Local 8155 from this case with prejudice. *See*, fn. 1, *supra*. Therefore, the only question presently before this Court is whether the discharge of Plaintiff was authorized under the terms of the collective bargaining agreement.

■ In order for the Plaintiff to prevail against the Defendant he must show that his discharge was contrary to the collective bargaining agreement as well as demonstrate a breach of the duty of fair representation by the union. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983); *see also, Bagsby v. Lewis Bros. Inc. of Tenn.*, 820 F.2d 799 (6th Cir.1987); *White v. Anchor*

*Motor Freight Inc.*, 899 F.2d 555, 559 (6th Cir.1990). Under a collective bargaining system the interests of the individual employee are subordinated to the interests of the bargaining unit; in this case, Local 8155. This subordination of interests imposes upon the bargaining agent a responsibility and a duty of fair representation. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 564, 96 S.Ct. 1048, 1056, 47 L.Ed.2d 231 (1976). As a preliminary matter, the Court finds that the collective bargaining agreement in question was signed by the union and Defendant Greif and was a valid, existing contract at the time of the discharge of Plaintiff.[2]

■ Reviewing the affidavits, deposition testimony and attachments filed by the parties, Plaintiff has failed to show that any genuine issue of fact exists as to the propriety of Plaintiff's discharge. Plaintiff has failed to present any evidence to refute the drug policy in effect at the time of his discharge. This policy stated that the possession of alcohol or drugs on the company's premises would result in automatic discharge. Furthermore, the Plaintiff has provided no evidence to refute that the marijuana was found in his boot. Although Plaintiff contends he did not own the marijuana, he not only possessed it in his boot, but there also is no evidence to contradict that he was subjected to a medically administered drug test which resulted in a positive finding of marijuana use.

In sum, the undisputed evidence shows the following:

1) Plaintiff knew of the collective bargaining agreement provision that possession of marijuana on the company's premises would result in discharge.

2) Marijuana was found in Plaintiff's boots on the Company's premises.

**2.** Plaintiff tries to avoid the imposition of the collective bargaining agreement's drug policy in effect on October 5, 1993, by arguing that at the time of the incident the company and the union were in the midst of agreeing upon a new drug policy. This argument is without merit. The only valid enforceable collective bargaining agreement to be considered by this Court is that agreement which was in force at the time of the alleged incident. Any subsequent change to the agreement's drug policy is irrelevant to the issue of whether Defendant breached the collective bargaining agreement by discharging Plaintiff under the terms of the agreement in place at the time of the incident.

3) As a result of finding the marijuana, the company requested that Plaintiff undergo a urine test.

4) The urine test came out positive for use of marijuana.

5) Upon receipt of the urine test results, Plaintiff was discharged.

Therefore, there are no genuine issues of material fact in dispute. Defendant, Greif Corporation, did not breach the terms of the collective bargaining agreement by discharging Plaintiff for violation of the well established company policy prohibiting the possession of illegal drugs on company property.

For the foregoing reasons, the Motion of Defendant, Greif Board Corporation, for Summary Judgment (Doc. # 37) is GRANTED.

This case is DISMISSED with prejudice.

All costs to Plaintiff.

IT IS SO ORDERED.